## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Amy Marie Kemper, as assignee of
Christopher L. Brown,

                 Plaintiff,        Case No. 1:15-cv-2961-MLB

v.

Equity Insurance Company

                 Defendant.

_____/

## **OPINION & ORDER**

This bad faith failure to settle case arises from an automobile incident involving Defendant Equity Insurance Company's insured, Christopher Brown, and Plaintiff Amy Marie Kemper.  The parties have filed cross-motions for partial summary judgment.  (Dkts. 292; 296.)  Ms. Kemper also moves for Rule 11 sanctions against Equity.  (Dkt. 307.)  And Equity moves to file an untimely response to Ms. Kemper's sanctions motion.  (Dkt. 308.)  The Court grants Ms. Kemper's summary judgment motion, denies Equity's summary judgment motion, denies Ms. Kemper's

sanctions motion, and grants Equity's motion to file a late sanctions response.

## I.  Background

### A.  The Insurance Claim

In March 2012, Christopher Brown drove his vehicle across a road's center line into oncoming traffic and struck Ms. Kemper, who was riding her motorcycle.  (Dkt. 252-1 at 1.)  Mr. Brown was drunk.  (Dkt. 224-1 at 2.)  Ms. Kemper was injured and airlifted to a hospital. (Dkt. 235-9 ¶ 3.) Brown had an automobile liability insurance policy with Equity that provided $25,000 per person in bodily injury liability coverage.  (Dkt. 224-165 at 2.)   Equity retained Statewide Claims Service to adjust Ms. Kemper's claims against Mr. Brown. (Dkts. 224-1 at 1; 252-1 at 5–6.) Statewide and its adjuster, Mr. Chop, began working on Ms. Kemper's claims after they received notice of the accident and the police report. (Dkt. 252-1 at 5–6.)  Statewide confirmed the insurance policy provided liability coverage for the accident and concluded Mr. Brown was at fault for the accident.  (*Id.* at 7–8.)

In April 2012, Statewide received a claim form that included Ms. Kemper's $24,456.92 air ambulance bill and an authorization and

consent with an assignment of benefits and lien provision, which Ms. Kemper had not signed.  (Dkts. 223-5 at 2; 252-1 at 8.)  Statewide also received several medical bills and statements for medical expenses Ms. Kemper incurred because of the accident.  (Dkts. 116-1 at 53:1–6; 54:1–23; 223-5 at 5–7, 9–10, 12.)  Mr. Chop concluded that Ms. Kemper's medical bills exceeded the $25,000 policy limit.  (Dkt. 116-1 at 55:2–23.) He sent Mr. Brown a letter acknowledging the loss under the insurance policy.  (Dkt. 224-4 at 1.)

### B.    Ms. Kemper's Demand

In April 2012, Mr. Chop sent Ms. Kemper a letter and requested that she provide a medical update or medical bills, medical records from her treating physicians, and information about any lost wages.  (Dkt. 224-10 at 1.)  Attorney Michael Werner helped Ms. Kemper draft a demand letter in response.  In it, Ms. Kemper offered to sign a limited release in exchange for the liability policy's limit.  (Dkt. 224-11 at 1.)  She stated the release must not have any language about her paying Mr. Brown's or Equity's "incurred costs" and that Equity must deliver the check to her before June 8, 2012.  (*Id*. at 1.)  Ms. Kemper also wrote "PLEASE DO Not contact me, or my Friends as this DEmand is very simple [sic]."  (*Id*. at

2.)  Mr. Chop received the letter, evaluated Ms. Kemper's claims, and concluded her medical bills exceeded the insurance policy's limits.  (Dkts. 116-1 at 92:24–93:19; 224-18 at 3.)

Statewide knew Ms. Kemper's medical bills were extensive and, not knowing whether she had adequate medical coverage, feared medical providers would file liens on her claims against Mr. Brown.  (Dkt. 224-1 at 5–6.)  Statewide enlisted attorney Bill Allred, the founder of an insurance-defense firm, to assist.  (Dkts. 205 at 65:8–16; 224-93 at 1; 235-3 at 1; 252-1 at 40.)  He, in turn, hired another company to determine whether any of Ms. Kemper's medical providers had filed liens on her claims against Mr. Brown.  (Dkts. 224-1 at 8; 224-168 at 1; 252-1 at 45.)  That company found none.  (Dkt. 224-1 at 8; 252-1 at 45.)  Nevertheless, Statewide remained concerned about liens on Equity and Mr. Brown's behalf, given the extent of Ms. Kemper's medical bills.  Statewide also sent Mr. Brown a letter stating that Equity had settled Ms. Kemper's claim for $25,000.  (Dkt. 224-17 at 1.)

Statewide, as the administrator for Equity, responded to Ms. Kemper's demand letter within the time required.  (Dkt. 224-13.)  It sent her a $25,000 settlement check, a limited release, and a Medicare form

for Ms. Kemper to execute and return.  (*Id*. at 1.)  Statewide stated that

it was tendering Mr. Brown's policy limits to settle Ms. Kemper's claim.

(*Id*.)  Statewide also included the following paragraph in its response.

> In concluding the settlement, we are entrusting that you place
> money in an escrow account in regards to any and all liens
> pending. This demand is being asserted to protect the lien's
> interest and in accordance with the recent case law, *Southern
> General Insurance Co. vs. Wellstar Health System, Inc.*

(*Id*.)

Ms. Kemper's counsel rejected Statewide's conditions and returned

the check.  (Dkt. 224-20 at 1.)  He stated that the demand Ms. Kemper

place her money in escrow was unacceptable.  (*Id*.)  He explained, "Ms.

Kemper has over one million dollars of medical bills, is catastrophically

injured, and she needs this money to live."  (*Id*.)  Ms. Kemper later sued

Mr. Brown in the Superior Court of Heard County, Georgia. Equity

defended him.  (Dkt. 252-1 at 58.)  The trial court granted Mr. Brown's

motion to enforce his purported settlement agreement with Ms. Kemper.

The Georgia Court of Appeals, however, reversed holding Statewide's

June 5th response to Ms. Kemper's demand letter was a counteroffer, not

an acceptance.  *See Kemper v. Brown*, 754 S.E.2d 141, 143–44 (Ga. Ct.

App. 2014).  Because she had not accepted the counteroffer, the court held

there was no settlement.  *Id.* (concluding the parties reached no binding settlement).   Ms. Kemper obtained a $10 million consent judgment against Mr. Brown, and he assigned to her his good faith failure to settle claim against Equity.  (Dkt. 252-1 at 60, 63.)

### C.    Procedural History

In July 2015, Ms. Kemper sued Equity in the State Court of DeKalb County, Georgia, asserting a claim for negligent or bad-faith failure to settle.  (Dkt. 1-1.)  Equity removed the case to federal court.  (Dkt. 1.) Under Georgia law, an insurer can be held liable for the negligent or bad-faith failure to settle a claim within a policy's limits when it had knowledge of clear liability and special damages exceeding that limit.  *See S. Gen. Ins. Co. v. Holt*, 416 S.E.2d 274, 276 (Ga. 1992).   An insurer deciding whether to settle or try a case must act as an "ordinarily prudent insurer," and may be liable if such an insurer "would consider [that] choosing to try the case created an unreasonable risk" of unfavorable results.  *See Cotton States Mut. Ins. Co. v. Brightman*, 580 S.E.2d 519, 521 (Ga. 2003) (citing *U.S. Fid. & Guar. Co. v. Evans*, 156 S.E.2d 809, 811 (Ga. App.), aff'd, 158 S.E.2d 243 (Ga. 1967)).  Generally, a jury must decide the issue of negligent or bad-faith failure to settle.  *See Holt*, 416

S.E. 2d at 276.  In *Wellstar*, the Georgia Court of Appeals created a "safe harbor" for insurers who may be faced with failure-to-settle claims.  The safe harbor applies when "(1) the insurer promptly acts to settle a case involving clear liability and special damages in excess of the applicable policy limits, and (2) the *sole* reason for the parties' inability to reach a settlement is the plaintiff's unreasonable refusal to assure the satisfaction of any outstanding hospital liens." *Wellstar*, 726 S.E.2d at 493.

On the parties' cross-motions for summary judgment, this Court denied Ms. Kemper's motion and granted Equity's motion, finding *Wellstar* provided Equity with a safe harbor that freed it from the rock-and-a-hard-place decision of choosing between lien exposure after paying the claim or exposure to a bad-faith lawsuit for failing to pay the claim. (Dkt. 272.)  On appeal, the Eleventh Circuit ruled that there are numerous disputed factual issues surrounding the issues of negligence and bad faith, requiring consideration by a jury.  (Dkt. 283 at 2.) Accordingly, the Eleventh Circuit reversed the grant of summary judgment and remanded this case for trial.  (*Id.*)  Following remand, this Court set a status conference for January 11, 2021.  At the status

conference, Plaintiff sought leave to file a motion for partial summary judgment on three discrete issues raised in her original motion. Equity did not request leave to file a motion. This Court granted Ms. Kemper's request. (Dkt. 288.)

## II.   Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "No genuine issue of material fact exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which that party will bear the burden of proof at trial.'" *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186–87 (11th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

The moving party bears the initial responsibility of asserting the basis for his motion. *See Celotex Corp.*, 477 U.S. at 323. The movant is not, however, required to negate the non-movant's claim. Instead, the moving party may meet his burden by "'showing'—that is, pointing to the

district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.  After the moving party has carried its burden, the non-moving party must present competent evidence that there is a genuine issue for trial.  *Id*. at 324.

The Court views all evidence and factual inferences in a light most favorable to the non-moving party.  *See Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988).  But the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Anderson*, 477 U.S. at 248. "The requirement is that there be no *genuine* issue of *material* fact."  *Id*. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251–52.

## III.  Discussion

Ms. Kemper filed a motion for partial summary judgment, asking this Court to determine as a matter of law that (1) Ms. Kemper's demand to statewide was an "offer" capable of acceptance, (2) Equity made a "counteroffer," and (3) a counteroffer is a "rejection."  (Dkt. 292.)   In

response, Equity argues that, because Ms. Kemper's time-limit demand "did not address hospital liens and expressly forbid communication which could have yielded such information," it cannot be deemed a valid, acceptable offer and thus cannot give rise to a bad faith claim. (Dkt. 297 at 3.)   Contending that Ms. Kemper's partial motion for summary judgment "opened the door" to the issue of the validity of her time-limit demand, Equity filed a renewed motion for partial summary judgment, further arguing that Ms. Kemper's demand was not a valid time-limit demand and therefore her bad faith claim fails as a matter of law. (Dkt. 261-1 at 4.)

## A.    Plaintiff's Motion for Partial Summary Judgment

To begin with, the Court finds Equity's response to Ms. Kemper's motion conflates legal principles of contract law—i.e., whether Ms. Kemper's demand was an "offer" and Equity's response a "counteroffer"—with the ultimate issue in this case—whether Equity's response to Ms. Kemper's demand was reasonable or constituted bad faith failure to settle. The Court also notes, however, that the principles of contract law on which Ms. Kemper seeks summary judgment are not necessarily at

issue here.[1]  Whether Ms. Kemper's demand constitutes an "offer" and Equity's response a "counteroffer" is a preliminary legal issue separate from the issues of fact relating to Ms. Kemper's bad faith failure to settle claim, such as whether Equity's response to Ms. Kemper's demand was reasonable under the circumstances, whether Ms. Kemper's ban on communications was an unreasonable refusal to assure satisfaction of a known lien, and whether this communication ban was the "sole" reason for the parties' inability to reach a settlement.  (Dkt. 283.)  With that important distinction in mind, the Court grants Plaintiff's partial motion for summary judgment as follows.

### 1.  Ms. Kemper's Demand was an Offer Capable of Acceptance.

Courts construe offers as a matter of law to determine whether they are "capable of acceptance" under contract law.  *E.g.*, *Herring v. Dunning*, 213 Ga. App. 695, 698 (1994) (construing the plaintiff's written offer to contain "implied promise to execute some instrument terminating the

---

[1] Ms. Kemper acknowledges that these legal issues are not or should not be at issue in this litigation, and simply seeks to preclude Equity from asserting arguments to the contrary.  (*See* Dkt. 292-1 at 9 ("This Court should not allow Equity to muddy the waters or confuse the jury by suggesting that whether there was an offer, a counteroffer or a rejection are at all issues in this litigation.").)

controversy as to that settling defendant"). Courts employ "an objective theory of intent" when construing offers and counteroffers. *Frickey v. Jones*, 280 Ga. 573, 575 (2006).

In applying "the applicable rules of contract construction," Ms. Kemper's demand clearly constituted an offer. *See First Acceptance Ins. Co. of Ga., Inc. v. Hughes*, 305 Ga. 489, 493, 826 S.E.2d 71, 75 (2019) (employing rules of contract construction to determine whether claimant offered to settle her claims within the insured's policy limits); *see also H&E Innovation, LLC v. Shinhan Bank Am., Inc.*, 343 Ga. App. 881, 885 (2017) ("Because a settlement agreement is a contract, it is subject to the usual rules of statutory construction."). Ms. Kemper's demand asked for full payment and "In exchange, I will agree to sign a limited release." (Dkt. 224-11 at 1.) The letter described how the check should be made payable, where it should be sent, and provided an unambiguous deadline. (*Id.* at 2.)

Equity argues that the black-letter contract law of offer and acceptance is inapplicable to a claimant's offer to an insurance company to settle an insurance claim. (Dkt. 297 at 3–4.) Equity argues that because Ms. Kemper's demand was silent on hospital liens and contained

a ban on any further communication, Equity did not have a "reasonable opportunity to settle," and therefore the demand was not an offer capable of acceptance. (*Id.* at 12–14.) But again, Equity is conflating the ultimate issue in this case—i.e., whether Equity's response was reasonable—with the discrete legal issue of whether Ms. Kemper's demand constituted an offer to settle. Indeed, the authority cited by Equity makes the distinction abundantly clear. For example, Equity cites *Baker v. Huff,* in support, where the Court found that "the facts show as a matter of law that the June 19 settlement ***offer*** was made under circumstances which provided no reasonable settlement opportunity." 323 Ga. App. 357, 367, 747 S.E.2d 1,8 (2013) (emphasis added). Clearly, the determination that there is "no reasonable settlement opportunity" and thus no bad faith failure to settle, which the *Baker* court recognized is "usually a jury question," is separate from a preliminary finding that the claimant made an *offer* to settle. *Id.* Whether Ms. Kemper's demand was an "offer capable of acceptance" under principles of contract law is unaffected by whether the terms of her demand were unacceptable to Equity. Stated another way, the fact that Ms. Kemper's demand did not mention hospital liens and contained a communication ban does not go to whether

13

the demand was "an offer capable of acceptance," but to whether Equity's response was reasonable under the circumstances. The Court finds that Ms. Kemper's demand was an offer to settle.

### 2. Equity's Response was a Counteroffer and thus a Rejection.

The Court also finds as a matter of law that Equity's response to Ms. Kemper's demand was a counteroffer. "A purported acceptance of a plaintiff's settlement offer which imposes conditions will be construed as a counter-offer to the offer to settle for the policy limits." *Grange v. Woodard*, 300 Ga. 848, 852 (2017). Like offers, responses to offers are construed with "an objective theory of intent." *Frickey*, 280 Ga. at 575. "A counteroffer acts to reject and nullify the original offer." *Costello v. Eagle*, 308 Ga. App. 254, 257 (2011).

Equity's response required Ms. Kemper to place the policy proceeds into an escrow account. (Dkt. 224-13 at 1.) The escrow account demand imposed a condition, and thus Equity's response must be construed as a counteroffer. Equity's sole argument is that the finding in *Kemper v. Brown*, 325 Ga. App. 806, 754 S.E.2d 141 (2014), that Equity's response was a counteroffer does not collaterally estop Equity from now arguing that Ms. Kemper's demand was invalid and was not capable of

14

acceptance.  But the Court need not even reach the application of the collateral estoppel doctrine in this instance, as the Court finds that Equity's response was a counteroffer as a matter of black-letter contract law.  *See Grange*, 300 Ga. at 852.  The crux of Equity's argument in opposition is that Ms. Kemper's demand was not an offer capable of acceptance due to her failure to address liens and her communication prohibition.  But as this Court seeks to make abundantly clear, these facts go to the ultimate issue of whether Equity's response was reasonable or in bad faith.  Thus, the Court holds that Ms. Kemper's May 18, 2012 demand was an offer to settle, and Equity's response was a counteroffer and thus a rejection.

The Court anticipates all of this means very little to the trial of this case.  It bears repeating that the jury will decide whether Equity acted negligently or in bad faith in failing to settle the claim against its insured.  As part of this, the jury will assess the reasonableness of Equity's conduct under the circumstances, including the details of the offer Ms. Kemper made and the details of Equity's response.  Labeling Ms. Kemper's initial communication an "offer" or Equity's response a "counteroffer" does not control this assessment.  The jury will consider the circumstances of the

parties' communications in reaching its decision (and arguably does not even have to know of these legal labels).

## B. Equity's Renewed Motion for Partial Summary Judgment

Much like its opposition brief, Equity's renewed motion argues that because Ms. Kemper's demand did not address liens and prohibited communications, it was not a valid, acceptable time-limit demand as a matter of law. Equity asserts that, when *First Acceptance* and *Wellstar* are read in tandem, they require a finding that a demand must address or allow to be addressed hospital liens in order to be a valid, time-limit demand triggering an insurer's duty to settle. (Dkt. 296-1 at 2.)

### 1. Equity's Motion is Untimely.

As an initial matter, the Court notes the deadline for dispositive motions was January 9, 2018. (Dkt. 236.) A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Equity neither demonstrated good cause nor sought the Court's consent before filing this motion. Even if the Order permitting Ms. Kemper to file her motion for partial summary judgment no later than February 2, 2021 (Dkt. 288) applied to Equity, Equity's motion would still be untimely. In an effort to excuse its tardiness, Equity argues

that Ms. Kemper "opened the door" to a ruling on the validity of her demand through the arguments in her motion for partial summary judgment.  (Dkt. 306 at 13.)  But as this Court has been careful to emphasize, Ms. Kemper's motion was limited to the discrete legal issues of whether Ms. Kemper's demand was an offer and whether Equity's response was a counteroffer and thus a rejection.  Contrary to Equity's assertions, those issues did not "open the door" to the dispositive issue of whether Ms. Kemper's demand was "valid," or, stated otherwise, whether it afforded Equity a "reasonable opportunity to settle."

### 2.  Equity's Motion is Barred by the Law of this Case.

Not only is it untimely, but Equity's renewed motion is also barred by the law of the case doctrine.  The Eleventh Circuit has ruled that the issues relating to Ms. Kemper's failure to address liens and prohibition on communications must be resolved by a jury.  The Court is unpersuaded by Equity's efforts to repackage its original arguments into something new and sidestep the Eleventh Circuit's ruling.

### a.  Equity rehashes the same arguments the Eleventh Circuit rejected on appeal.

"Under the 'law of the case' doctrine, the findings of fact and conclusions of law by an appellate court are generally binding in all

subsequent proceedings in the same case in the trial court or on a later appeal." *This That & The Other Gift And Tobacco, Inc. v. Cobb Cnty.*, 439 F.3d 1275, 1283 (11th Cir. 2006) (citing *Heathcoat v. Potts*, 905 F.2d 367, 370 (11th Cir. 1990) (internal quotation marks and citation omitted). The doctrine "bars relitigation of issues that were decided either explicitly or by necessary implication." *Id*. And it applies to issues that could have been raised in a prior appeal but were not. *United States v. Stein*, 964 F.3d 1313, 1325 (11th Cir. 2020), *cert. denied* (2020); *James v. Hunt*, 782 F. App'x 968, 971 (11th Cir.), *cert. denied* (2019). The doctrine's central purposes include bringing an end to litigation, protecting against the agitation of settled issues, and ensuring that lower courts obey appellate orders. *See United States v. Williams*, 728 F.2d 1402, 1406 (11th Cir. 1984).

Equity's renewed motion argues that Ms. Kemper's "failure to address hospital liens in her demand and her communication prohibition makes her demand incapable of being a *valid*, *acceptable* time limit demand." (Dkt. 296-1 at 3.) Similarly, in its brief on appeal, Equity argued:

> Kemper's demand included a total ban on communication for any purpose and failed to address the medical lien question.

> The first question raised is whether the demand, itself was a valid time-limit demand, given Kemper's failure to assure satisfaction of pending medical liens.

(Dkt. 303-2 at 27.) In fact, Equity's renewed motion essentially repurposes one of the three issues presented to the Eleventh Circuit on appeal. (*See id.* at 9 ("Whether under *Holt* and *Wellstar* [citations omitted], Kemper's demand was a valid time-limit demand because it did not address liens (or assure their satisfaction) and instructed Statewide to not contact Kemper.").)

The Eleventh Circuit considered Equity's arguments and found there were "too many disputed issues related to the failure-to-settle claim to grant summary judgment in favor of Equity." (Dkt. 283 at 5.) Moreover, in reaching that determination, the Eleventh Circuit identified specific facts necessitating a jury determination, many of which go *directly* to the heart of Equity's renewed motion. (*Id.* at 5–6.) For example, the Court noted that Statewide's outside counsel said that there was no reasonable basis to fear liens and that the claim director could not identify how contacting Ms. Kemper would have helped Statewide settle the claim. (*Id.*) The Eleventh Circuit found that these facts

support Ms. Kemper's position that Equity acted in negligence or bad faith and accordingly preclude summary judgment for Equity. (*Id.*)

Equity urges the Court to narrowly construe the "issue" addressed on appeal, arguing that the Eleventh Circuit did not consider whether Ms. Kemper's failure to address liens and prohibition on communications rendered her demand invalid, but only whether the safe harbor provision applied under the facts at bar. (Dkt. 306 at 2.) The Court is not persuaded by Equity's attempt to thread the needle and mischaracterize the Eleventh Circuit's holding in the process. To be sure, the Eleventh Circuit "appl[ied] the *Wellstar* safe harbor standard" in its opinion, as that was the standard this Court employed when it granted summary judgment in Equity's favor. (*See* Dkt. 272.) And in applying that standard the Court found "there are numerous factual issues here surrounding the issue of negligence and bad faith, **even bearing *Wellstar* in mind**." (Dkt. 283 at 2 (emphasis added).) The cases cited by Equity do not move the needle. Not one case calls for anywhere near the exceedingly narrow and selective application that Equity urges this Court to use. *See Ne. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 951 F.2d 1217, 1218 n.1 (11th Cir. 1992) (court

20

not barred by law of the case doctrine when "squarely presented with the issue of standing" and decision on the first appeal explicitly pretermitted issue of standing), *rev'd on other grounds*, 508 U.S. 656 (1993); *Hester v. Int'l Union of Operating Eng'rs*, 941 F.2d 1574, 1581 n.9 (11th Cir. 1991) (where prior appellate decision found district court erred in holding that it had no subject matter jurisdiction, law of the case doctrine did not bar district court from granting summary judgment on plaintiff's breach of contract claim); *Gaines v. Dougherty Cnty. Bd. of Educ.*, 775 F.2d 1565, 1568-69 (11th Cir. 1985) (because prior appellate decisions only discussed the merits of desegregation plans, the court could later address the district court's rulings on attorney fees); *Conway v. Chem. Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1062 (5th Cir. Unit A May 1981) (law of the case doctrine did not bar court from granting new trial law based on "a meritorious issue never previously passed upon by it and never submitted to or decided by the appellate court on the previous appeal"). The Court finds the Eleventh Circuit has addressed the "issue" presented by Equity's renewed motion.

### b.   No exception to the law of the case doctrine applies.

There are only three exceptions to the law of the case doctrine: (1) if there is substantially different evidence, (2) if controlling authority has since made a contrary decision of the law applicable to the issue, or (3) if the previous decision was clearly erroneous and would work a manifest injustice.   *Stein*, 964 F.3d at 1323.   Equity has not shown any new evidence or manifest injustice, so neither the first nor third exception may apply.   Equity's argument in its renewed motion is based on a "synthesis" of two Georgia cases, which could only possibly implicate the second exception.

Equity cites *First Acceptance,* 305 Ga. 489, which held that only a *valid* demand can trigger an insurer's duty to settle, and *Wellstar,* 315 Ga. App. 26, which held that an insurance company to create a "safe harbor" from liability when (1) the insurer promptly acts to settle a case involving clear liability and special damages in excess of the applicable policy limits, and (2) the *sole* reason for the parties' inability to reach a settlement is the plaintiff's unreasonable refusal to assure the satisfaction of any outstanding hospital liens.   (Dkt. 296-1 at 10–11.) Equity argues that these two decisions, taken together, require a finding

that when a claimant's demand fails to address liens and bars any further communication, it is an invalid and unacceptable time-limit demand. (*Id.* at 11.)

But for the second exception to the law of the case doctrine to apply, there must be an "intervening change in controlling authority." *State Farm v. Williams*, 824 F.3d 1311, 1315 (11th Cir. 2014). Equity's synthesis argument relies on *First Acceptance*, but that case was decided and brought to this Court's attention before the appeal. Indeed, Ms. Kemper brought *First Acceptance* to this Court's attention before it ruled on the parties' cross motions for summary judgment. (*See* Dkt. 269.) And Ms. Kemper discussed *First Acceptance* throughout her brief on appeal. (*See* Dkt. 303-1.) Equity filed its response brief almost one year after *First Acceptance* was decided but did not mention *First Acceptance* or its "synthesis" argument to the Eleventh Circuit. But Equity's silence on *First Acceptance* until now does not permit it to refashion its same argument around a case it did not previously cite and side-step the law of the case doctrine. *See Stein*, 964 F.3d at 1324–25 (holding law of the case doctrine applied to defendant's "previously unraised forfeiture argument," noting that "nothing prevented Stein from raising this claim

in district court . . . [or] during his first appeal"); *Hunt*, 782 F. App'x at 972 (applying law of the case to issues that could have been raised in earlier appeal but were not). *First Acceptance* was decided and brought to the Court's attention before the appeal and thus it is not "intervening" authority.

Nor is *First Acceptance* "controlling" authority for Equity's "synthesis" argument. *First Acceptance* held that (1) an insurer's duty to settle arises when the injured party presents a valid time-limit settlement demand, and (2) if an offer does not include an unambiguous deadline and fairly inform the insurer that it will face a lawsuit if the offer is not accepted, it is not a valid time-limit settlement demand. 305 Ga. at 495–6. There, the court found that the two letters were ambiguous as to the deadline, meaning that the purported offer "was not a time-limited settlement demand." *Id*. at 496. Here, it is undisputed that Ms. Kemper's demand provided an unambiguous deadline. (Dkts. 224-11 at 2 ("It must be delivered no later than June 8th, 2012"); 283 at 3 (noting Ms. Kemper's demand "provided a deadline").) The *First Acceptance* court also found that because the purported offer expressed willingness to mediate the claim, the insurer "could not have reasonably known that

it needed to respond within [the purported deadline] or risk that its insured would be subject to a judgment in excess of the policy limits." 305 Ga. at 497.  But here, Ms. Kemper did not offer an alternative to her demand and threatened to sue Equity's insured if it did not accept her demand.  (Dkt. 224-11 at 2 ("If you fail to meet my Demand, I will be forced to hire an attorney and sue Mr. Brown . . . .").)  *First Acceptance* is not intervening, controlling authority.  None of the narrow exceptions to the law of the case doctrine apply to Equity's argument.

The Eleventh Circuit held that the many disputed issues of fact related to the reasonableness of Ms. Kemper's demand and Equity's response must be resolved by a jury.  That is the law of this case.  Accordingly, the Court denies Equity's renewed motion.[2]

---

[2] Ms. Kemper wants the Court to sanction Equity for filing its summary judgment motion.  She claims Equity's motion is frivolous and was filed "sole[ly] for the purpose of "delay and/or harassment."  (*See* Dkt. 307 at 1, 14.)  The Court is unwilling to go that far.  The Court rejects Equity's argument but does not find it so obviously frivolous or improper that it warrants sanctions under Rule 11.  *See Granados v. Palm Coast Bldg. Maint., Inc.*, 2021 WL 1617689, at *2 (S.D. Fla. Jan. 26, 2021) ("Rule 11 is an extraordinary remedy, one to be exercised with extreme caution."); *Robert v. Abbett*, 2009 WL 902488, at *23 (M.D. Ala. Mar. 31, 2009) ("The imposition of sanctions under Rule 11 is reserved for only the most egregious violations."); *see also Thomas v. Evans*, 880 F.2d 1235, 1240 (11th Cir. 1989) ("Rule 11 sanctions are not appropriate, however, merely

## IV.  Conclusion

The Court **GRANTS** Plaintiff's Motion for Partial Summary Judgment (Dkt. 292), **DENIES** Defendant's Renewed Motion for Partial Summary Judgment (Dkt. 296), **DENIES** Plaintiff's Rule 11 Motion for Sanctions (Dkt. 307), and **GRANTS** Defendant's Motion for Leave to File Brief in Opposition to Plaintiff's Rule 11 Motion (Dkt. 308).

The Court also **ORDERS** this case to mediation.  The parties may retain a mediator to mediate this case.  The expense of a retained mediator must be paid by the parties.  The parties may, alternatively, ask the Court to appoint a magistrate judge to conduct the mediation. The parties are not required to pay for mediation by a magistrate judge.

The parties shall advise the Court of their mediation preference no later than September 1, 2021.  If the parties elect to retain their own mediator, they shall identify the mediator no later than September 15, 2021.  The parties must have present at the mediation a person with authority to settle this litigation.

---

because the pleader's view of the law is incorrect.").  The Court thus denies Ms. Kemper's motion for sanctions.  The Court grants Equity's unopposed motion to file a late response to the sanctions motion.

The parties shall, within five days after the mediation, notify the Court in writing whether mediation resulted in a settlement of this action.

The Court **DOES NOT STAY** this case or continue any deadlines pending mediation.

**SO ORDERED** this 18th day of August, 2021.


_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE